## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

DORIAN VAN HORN,

      Plaintiff,

                                     Case No.:

v.

RICHARD V. SPENCER,
Secretary,
U.S. Department of the Navy,

      Defendant.

_____/

## **COMPLAINT**

**COMES NOW** the Plaintiff, Dorian Van Horn, by and through her undersigned counsel, and as her Complaint, pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a ("ADEA"), against Richard V. Spencer, Secretary, U.S. Department of the Navy, states as follows:

## **INTRODUCTION**

1.      For over 25 years, Plaintiff Dorian Van Horn had a successful career as a Special Agent for the Navy Criminal Investigative Services ("NCIS") of the U.S. Department of the Navy. When over the age of 40, Plaintiff Van Horn was subjected to a campaign of unlawful harassment and discrimination on account of her age as well as unlawful retaliation after she complained of discrimination leading to a forced retirement, *i.e.*, constructive discharge. This is an action for declaratory and monetary relief against Defendant, Richard V. Spencer, Secretary, the U.S. Department of the Navy (referred to herein as "Defendant", "Navy" or "NCIS"), for discriminating against Plaintiff Dorian Van Horn based on age in violation of the ADEA, and retaliating against Plaintiff following her protected activity of objecting to such discrimination.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 633a(c); and 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper as acts forming the basis of the Complaint occurred in the District of Columbia.

## PARTIES

4.      Plaintiff, Dorian Van Horn resides in Dumfries, Virginia.

5.      Defendant Navy is a federal governmental entity.  Plaintiff Van Horn worked and was posted at times at the Washington Navy Yard located in the District of Columbia, where NCIS maintains offices.

## CONDITIONS PRECEDENT

6.      Plaintiff Van Horn filed timely charges alleging employment discrimination and retaliation against the Navy with the agency's Equal Employment Opportunity office.

7.      More than 180 days has elapsed since Plaintiff commenced her formal actions with the agency EEO office, and she has received a Decision regarding an appeal to the Equal Employment Opportunity Commission of her claims of discrimination, harassment and retaliation under the ADEA on or about October 10, 2017.

8.      All conditions precedent to this action have been satisfied and this action is timely filed.

## FACTUAL ALLEGATIONS

9.      Throughout her career with NCIS which began in 1987, Plaintiff Van Horn was a highly competent, qualified and respected Special Agent.  At the time of her forced retirement in 2012, Plaintiff Van Horn worked as a Supervisory Criminal Investigator, GS-1811-14, Special

Agent (SA), serving as the Division Chief for Threat Management Unit/Insider Threat and Family & Sexual Violence.

10.     At all times relevant herein, Plaintiff was over 40 years of age, and Plaintiff's mandatory retirement date from NCIS at age 57 is in July 2022.

11.     Plaintiff Van Horn received regular quality step increase and performance awards based upon her job performance throughout her career with NCIS.

12.     Plaintiff Van Horn has regularly received letters of commendation and other letters of appreciation throughout her career with NCIS.

13.     Plaintiff Van Horn transferred approximately eight (8) times during the course of her career with NCIS, either by volunteering or selection.

14.     In or around February 27, 2011, Plaintiff Van Horn was promoted to a GS-14 SA with her posting listed by NCIS as the Washington Navy Yard in the District of Columbia on her SF 50 personnel form.

15.     In approximately 2011, NCIS recognized that it would not be able to achieve the required downsizing through normal attrition of personnel, including voluntary retirement of personnel.  As a result, NCIS embarked on a strategy of downsizing its personnel through forced transfers of retirement eligible Special Agents (*i.e.*, Special Agents over fifty (50) years of age) to undesirable locations which would increase the number of Special Agents choosing to retire early rather than transferring.

16.     During 2011 and into 2012, NCIS management had been unable to reduce the number of billets they had hoped through normal attrition and that the transfer policy had been changed to allow NCIS leadership to force out retirement eligible agents, like Plaintiff, by imposing undesirable transfers upon them.

17.     Plaintiff was subjected to a campaign of on-going unwanted harassment and intimidation by NCIS management because of Plaintiff's age.   For example, Defendant's management representatives involuntary transferred Plaintiff without cause or need on three (3) occasions in 2012, and cancelled Plaintiff's leave when Plaintiff complained to the NCIS EEO office about discrimination.   The transfers were to undesirable locations as well as job positions that were not commensurate with Plaintiff Van Horn/s skill set in order to force her from the workplace.   These acts by NCIS management were also perpetrated against other retirement eligible NCIS SAs in 2012 and thereafter so retirement eligible employees would be forced to leave NCIS.

18.     In 2012, Plaintiff's supervisors began stating that NCIS upper management was informing them that agent personnel levels were not reduced to a level that they would like through normal attrition.

19.     At all times relevant herein, NCIS management targeted senior retirement eligible agents, such as Plaintiff Van Horn, for transfers to billets and locations that were undesirable and in circumstances contrary to the expertise and experience of the NCIS personnel, in an effort to force these agents to retire early because of and/or based on their age.

20.     Plaintiff Van Horn was eligible to retire at the end of July 2012 with 25 years of service. On January 5, 2012, Plaintiff Van Horn was 47 years old. Under special law enforcement guidelines, SAs are eligible to retire at age 50 so long as they have 20 years of federal law enforcement service, or at any age with 25 years of federal law enforcement service. SAs have a mandatory retirement age of 57 years old.

21.     On or about January 5, 2012, Plaintiff received notification from Assistant Director

of Human Resources, John Hogan, that she was being forced to transfer Outside the Continental

United States (OCONUS) to Naples, Italy for a position of Criminal Assistant Special Agent in

Charge ("ASAC") and a report to billet date in June 2012.  The decision to transfer Plaintiff Van

Horn was made by Deputy Director Mark Ridley, with input from Hogan, in order to force Plaintiff

to leave NCIS, as there was no actual need to force transfer Plaintiff to Naples, Italy at the time

she was so informed.  Instead, Plaintiff Van Horn received the said notice of transfer to Naples

due to her age despite not bidding on any position and being in her then-current billet for less than

one (1) year.

22.     Deputy Director Ridley was the final decision maker for Plaintiff's forced transfer

to Naples, Italy, and he was generally under the belief that Plaintiff was retirement eligible because

she had joined NCIS around the same time Ridley had joined NCIS.

23.     According to NCIS policy, GENERAL ADMINISTRATION, dated 17MAY11,

GEN 11C-0014, Policy Document No 11-0006 Administrative (Mobility Program), Section 13-

12.i.(1)(c) provides, in pertinent part, as follows:

> i. Exemptions from the Mobility Policy.
> (1) Exemptions from the mobility program or special transfer request for manger and non-mangers will be considered under exceptional circumstance. When striking the proper balance of mission needs fairness and personal goals, absent extraordinary circumstances, personnel should not expect to be subject to an unrequested move when one of the following conditions are present: . .
>
> (c) Employees serving in a headquarters assignment for less than two years…

24.     Despite the policy of NCIS as set forth in paragraph 23 herein and any amendments

thereto, Plaintiff was involuntarily selected for a forced transfer after she had only been a G-14 for

10 months and working at NCIS headquarters.  Accordingly, the selection of Plaintiff for transfer

to Naples, Italy was contrary to NCIS policy.

25.     On January 5, 2012, Plaintiff Van Horn requested reconsideration by NCIS of the involuntary transfer order to Italy verbally and via email. Plaintiff explained in her request that her husband was not mobile to transfer with her because he was recently selected as a Department of Homeland Security Fellow, and that she was therefore requesting an exemption from mobility and to be allowed to remain in her current position in NCIS Headquarters.

26.     Plaintiff Van Horn also came to learn that there were voluntary qualified bidders for the Naples, Italy position, who were not retirement eligible.  Nevertheless, NCIS denied all requests for reconsideration of the forced transfer to Naples, Italy made by Plaintiff.

27.     In particular, there were multiple qualified bidders for the billet in Naples, Italy that Plaintiff Van Horn was selected for and an original bidder was selected after Plaintiff eventually announced her retirement.  The SA selected by NCIS for the Naples position was not selected using a time in place list or re-advertisement of the position by NCIS.

28.     On or about May 14, 2012, Plaintiff Van Horn made initial contact with an EEO counselor with NCIS regarding her belief that the January 2012 involuntary transfer to Naples, Italy was discriminatory as well as NCIS's failure to respond to her reconsideration request. Also, in approximately May 2012, Plaintiff Van Horn requested to be on leave for part of August and September 2012.  This leave request was initially approved by NCIS.

29.     After Plaintiff Van Horn reported a hostile work environment based upon age and filed an EEO complaint she was provided a letter by NCIS in retaliation directing Plaintiff to retire on or before July 31, 2012. This specific date was arbitrarily selected by Hogan in order to force Plaintiff out of her position with NCIS.

30.     On or about June 21, 2012, in response to requests by Plaintiff Van Horn for a written response to her request for reconsideration of the decision to select her for transfer to Naples, Italy, NCIS issued a letter denying Plaintiff's request for reconsideration (the "Letter").

31.      When the June 21, 2012 NCIS Letter to Plaintiff was issued, however, NCIS also canceled Plaintiff's leave for August and September 2012.

32.     In early August 2012, Plaintiff Van Horn was also sent for temporary assigned duty by NCIS without request to Norfolk, Virginia.  This transfer was made to further harass and intimidate Plaintiff as Plaintiff was not given meaningful work by NCIS, was stationed to sit in a conference room as there was no office for her, and the billet was a GS-13 billet and thus Plaintiff was downgraded from GS-14.

33.     On October 17, 2012, NCIS notified Plaintiff Van Horn that she was to be transferred to a Great Lakes, Illinois billet, effective November 4, 2012. This transfer was made to further harass and intimidate Plaintiff.

34.      Plaintiff Van Horn also came to learn that there were voluntary qualified bidders for the Great Lakes, Illinois position, who were not retirement eligible.

35.     In particular, there were two (2) qualified bidders for the Great Lakes, Illinois billet at the time Plaintiff Van Horn was involuntarily selected. An original bidder was then selected without use by NCIS of a time and place list or re-advertisement of the position by NCIS after Plaintiff announced her retirement.

36.     At all times relevant herein, at the time of Plaintiff's forced transfers and/or temporary assignment to Naples, Italy, Norfolk, Virginia and Great Lakes, Illinois, NCIS had agents who were willing and able to transfer to said assignments and were qualified for such

assignments, such that forced moves, like that required of Plaintiff, were not necessary or operationally required.

37.     At all times relevant in 2012, Plaintiff Van Horn's billet in Code 23B, Family and Sexual Violence/TMU/Insider Threat, was never advertised by NCIS as "open" and no SAs bid on her billet in Code 23B because it was never listed by NCIS as an open or soon to be an unoccupied billet. NCIS through its management, including Deputy Director Ridley, placed Plaintiff involuntarily in billets other qualified SAs bid on and transferred another agent into her billet which was not "open".  This was carried out by NCIS to target Plaintiff due to her age in an effort to force her to retire.

38.     Beginning in early 2012, because of the discriminatory actions of NCIS management premised on her age, Plaintiff Van Horn began suffering physically and emotionally from the work place acts taken against her. As the work environment at NCIS had become hostile on account of her age, Plaintiff experienced negative effects on her mental and physical health.

39.      When NCIS transferred Plaintiff into the billets involuntarily as described herein, it was with the specific intent to force Plaintiff's retirement due to her age. The actions of NCIS management as set forth in this Complaint, created a hostile work environment for Plaintiff on account of her age and protected activity, and caused Plaintiff such mental stress and physical ailments that she had no choice but to retire.

40.     After being informed of her forced transfers as well as the other unlawful harassment of Defendant she was subjected to, Plaintiff Van Horn found the working conditions at NCIS to be intolerable, as would a reasonable person in Plaintiff's position. The on-going conduct by Defendant against Plaintiff Van Horn and other retirement eligible agents of NCIS

created intolerable working conditions for Plaintiff, which resulted in the forced retirement of Plaintiff from her position with NCIS in October 2012.

41.     Other NCIS SAs who were considered retirement eligible by Defendant received similar discriminatory treatment by Defendant in or around 2012. For example, retirement eligible SAs Tom Brady, Valerie Thompson, Robert Davis, Edward Dan McCarthy, Bonnie Brady and others (the "Harassed SAs") were subject to forced transfers by Defendant that were similar to the treatment received by Plaintiff Van Horn.

42.     As with Plaintiff Van Horn, the Harassed SAs were targeted and harassed by Defendant due to their age.

43.     For example, Special Agent in Charge Mr. McCarthy observed that Defendant's senior leadership, including Director Clookie and Deputy Director Ridley, made it clear through their actions that they were going to force transfer older agents in the hope that such agents would retire on account of their age.

44.     As a result of the foregoing, Plaintiff Van Horn (and other senior agents) was targeted for discrimination by Defendant because of and/or on the basis of her age and the actions by Defendant were undertaken to coerce Plaintiff to retire on account of her age to thereby reduce personnel without having to actually transfer any employee.

45.     As a result of the discrimination and harassment she was subjected to by NCIS, Plaintiff Van Horn requested her retirement credentials from NCIS in September 2012, and gave a  retirement date of October 31, 2012. However, despite NCIS informing Plaintiff Van Horn that her credentials and corresponding retirement paperwork had been completed,  Assistant Director for Human Resources Hogan would not release them to Plaintiff and Plaintiff did not receive her

retirement credentials until three (3) weeks after her retirement date. This delay was to further

harass, intimidate and retaliate against Plaintiff.

## COUNT ONE
**(Violation of the Age Discrimination in Employment Act of 1967, as amended
29 U.S.C. § 633a-Disparate Treatment/Hostile Work Environment)**

46.     Plaintiff Van Horn realleges and incorporates paragraphs 1 through 45 above as if

set forth in full herein.

47.     Defendant NCIS unlawfully discriminated against Plaintiff Van Horn by, *inter alia*,

the forced transfers of Plaintiff, creating a hostile work environment and by constructively

terminating her employment because of and/or based on her age, when she was forced to resign

her position.

48.     Defendant NCIS also unlawfully discriminated against Plaintiff Van Horn because

it knew or should have known that the unlawful hostile work environment that existed for Plaintiff

Van Horn was in violation of the ADEA.

49.     Defendant NCIS repeatedly harassed Plaintiff Van Horn because of and/or based

on her age and engaged in unwelcome conduct that was sufficiently severe or pervasive to alter

the terms, conditions and privileges of Plaintiff's employment, thereby creating an unlawful hostile

working environment for Plaintiff Van Horn on account of her age.

50.     Defendant NCIS's unlawful harassment of Plaintiff was because of and/or based

on her age and unreasonably interfered with Plaintiff's employment and created an objectively

intimidating, hostile or offensive work environment.  Such unlawful harassment includes, but is

not limited to: Defendant's management representatives involuntarily moving Plaintiff on multiple

occasions, cancelling Plaintiff's planned leave, giving Plaintiff an order of transfer in violation of

established policy, and other hostile acts against Plaintiff, all creating an environment where

retirement eligible employees like Plaintiff were being singled out for transfers in order to force

their removal from NCIS. This unlawful harassment culminated in Plaintiff being unfairly forced

out of her position in the workplace at NCIS based on her age.

51.     Defendant NCIS also became aware of NCIS's harassment upon Plaintiff because

or and/or based on her age by internal complaints, but failed to take prompt remedial action.

52.     Plaintiff Van Horn was subjected to adverse employment action when she was,

among other things, given multiple involuntary transfers, reduced to a GS-13 billet and forced to

retire because of and/or based on her age.

53.     Defendant NCIS's other agents who were non-retirement eligible were not subject

to the same treatment and adverse employment actions that Defendant levied upon Plaintiff Van

Horn.

54.     Any non-discriminatory reason proffered by Defendant NCIS for transferring

Plaintiff and terminating Plaintiff by her forced retirement is merely pretext for unlawful age

discrimination.

55.     As a direct and proximate result of Defendant NCIS's unlawful discrimination

against Plaintiff because of and/or based on her age, Plaintiff Van Horn has suffered, and will

continue to suffer lost wages in the form of back pay and front pay, lost benefits and entitlements,

damage to her career and reputation, and other damages.

## COUNT TWO
### (Violation of the Age Discrimination in Employment Act of 1967, as amended 29 U.S.C. § 633a-Retaliation)

56.     Plaintiff Van Horn realleges and incorporates paragraphs 1 through 45 above as if

set forth in full herein

57.     Plaintiff engaged in actions protected by the ADEA when she objected to and

11

complained about unlawful discrimination on account of her age to Defendant's EEO officer and others in May 2012 and before.

58.     Because of Plaintiff's protected actions, Defendant retaliated against Plaintiff by a campaign of harassment against Plaintiff, interfering with Plaintiff's employment with NCIS and ultimately forcing Plaintiff to retire ten (10) years before she wanted to retire.

59.     As a direct and proximate result of Defendant's retaliatory actions, Plaintiff Van Horn has suffered, and will continue to suffer lost wages in the form of back pay and front pay, lost benefits and entitlements, damage to her career and reputation, and other damages.

**WHEREFORE**, Plaintiff Dorian Van Horn respectfully requests judgment on each claim herein against Defendant Richard V. Spencer, Secretary, U.S. Department of the Navy, for her damages and equitable relief, including, but not limited to, back pay, front pay, lost benefits and any other economic damages; reinstatement; attorneys' fees and costs; prejudgment and post-judgment interest; and such other relief that this Court deems just and proper under the circumstances.

Dated: January 8, 2018                 Respectfully submitted,


                                       */s/ Neil L. Henrichsen*
                                       Neil L. Henrichsen
                                       DC Bar No. 420277
                                       HENRICHSEN SIEGEL, P.L.L.C.
                                       1150 Connecticut Avenue, NW, Suite 900
                                       Washington, DC 20036
                                       Tel: (202) 862-4356
                                       Fax: (202) 379-9792
                                       nhenrichsen@hslawyers.com
                                       service@hslawyers.com

                                       Attorneys for Plaintiff