**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DORIAN VAN HORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-38 (RBW) |
| | ) | |
| CARLOS DEL TORO, in his official | ) | |
| capacity as Secretary, U.S. Department of | ) | |
| the Navy, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, Dorian Van Horn, brings this civil action against the defendant, Carlos Del

Toro, in his official capacity as Secretary of the United States Department of the Navy, asserting

claims of discrimination based upon her age, and retaliation, in violation of the Age

Discrimination in Employment Act, 29 U.S.C. § 633a (the "ADEA").[1]  See Amended Complaint

("Am. Compl.") ¶¶ 46–47, 52–59, ECF No. 21-2.  Currently pending before the Court is the

Defendant's Motion for Summary Judgment ("Def.'s Mot." or the "defendant's motion"), ECF

No. 75.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the

---

[1] The plaintiff also brought a claim of hostile work environment based upon her age in violation of the ADEA.  See Am. Compl. ¶¶ 48–51.  However, on March 6, 2020, the Court granted the defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, ECF No. 19, "to the extent it s[ought] to dismiss the plaintiff's hostile work environment claim in Count One of the plaintiff's Amended Complaint."  Order at 1 (Mar. 6, 2020), ECF No. 45.  Accordingly, the only remaining claims in this case are those alleging discrimination based upon the plaintiff's age, and retaliation, in violation of the ADEA.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 75; (2) the Defendant's Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Facts"), ECF No. 75-1; (3) the Defendant's Motion for Summary Judgment and Memorandum in Support Errata ("Def.'s Errata"), ECF No. 76; (4) the Defendant's Motion for Summary Judgment and Memorandum in Support Errata ("Def.'s 2d Errata"), ECF No. 77; (5) the Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 80; (6) the Plaintiff's Response to

(continued . . .)

following reasons that it must grant the defendant's motion for summary judgment.

## I.   BACKGROUND

### A.   Factual Background

The plaintiff, Dorian Van Horn, "[i]n January[] 2012," was employed "in the [Naval Criminal Investigative Services (']NCIS[')] Criminal Investigations Directorate at NCIS Headquarters."[3]  Def.'s Facts ¶ 3; see Pl.'s Facts at 2 ¶ 3.  At that time, she was "over the age of [forty,]" Def.'s Facts ¶ 3; see Pl.'s Facts at 2 ¶ 3, and specifically, she was "[forty-seven] years old[,]" Pl.'s Facts at 23 ¶ 33; see Def.'s Resp. to Pl.'s Facts ¶ 33.  Furthermore, "[the p]laintiff was not . . . retirement eligible in January 2012[,]" Pl.'s Facts at 23 ¶ 34; see Def.'s Resp. to Pl.'s Facts ¶ 34, but "was eligible to retire at the end of July 2012[,]" Pl.'s Facts at 23 ¶ 33; see Def.'s Resp. to Pl.'s Facts at 36–37 ¶ 33.  During her employment, the plaintiff was "subject to the Agency's Mobility Program[,]"  Def.'s Facts ¶ 5; see Pl.'s Facts at 2 ¶ 5, which required her to "sign a Mobility Agreement, acknowledging [her] understanding that one or more overseas assignments and periodic transfers within [the contiguous United States] w[ould] be required throughout [her] career[,]" Def.'s Mot., Exhibit ("Ex.") 4 (Special Agent Career Program) ¶ 13-12(a), ECF No. 75-5 .  On or about January 4, 2012, "Special Agent Matthew Lascell, [the p]laintiff's direct supervisor, telephoned [the p]laintiff . . . to inform her that she was selected for the [Assistant Special Agent in Charge (']ASAC[')] position in Naples, Italy."  Def.'s Facts at 2, ¶ 13; see Pl.'s Facts at 6 ¶ 13.  Following notification of her impending transfer to Naples, Italy,

---

(. . . continued)
Defendant's Statement of Material Facts and Statement of Material Facts in Dispute ("Pl.'s Facts"), ECF No. 80-1; (7) the Plaintiff's Notice of Clarification ("Pl.'s Notice"), ECF No. 82; (8) the defendant's Reply in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 83; and (9) the defendant's Combined [1] Reply to Plaintiff's Responses to Defendant's Statement of Material Facts and [2] Response to Plaintiff's Statement of Disputed Material Facts ("Def.'s Resp. to Pl.'s Facts"), ECF No. 83-1.

[3] The NCIS Headquarters are located in Quantico, Virginia.  See NCIS, Locations, https://www.ncis.navy.mil/About-NCIS/Locations/ (last visited June 16, 2023).

"[the p]laintiff made several requests for reconsideration [of the transfer], including a request for reconsideration with Susan Raser, which [ ] Raser denied."  Def.'s Facts at 3, ¶ 14; see Pl.'s Facts at 6–7 ¶ 14.  "On January 5, 2012, [the] NCIS released a General Administration Notice formally announcing that [the p]laintiff had been selected for transfer to Naples, Italy[,] for an ASAC position, with a reporting date of June 2012."  Def.'s Facts ¶ 16; see Pl.'s Facts at 7 ¶ 16.  Thereafter, on March 20, 2012, "[the p]laintiff made a request for reconsideration . . . addressed to Deputy Director Mark Ridley, based on her husband's employment with the Department of Homeland Security[,]" Def.'s Facts ¶ 17; see Pl.'s Facts at 7 ¶ 17, and on that same day, "[Ridley] contacted [the p]laintiff to explain the decision to reassign her to Italy and denied her request for reconsideration."  Def.'s Facts ¶ 18; see Pl.'s Facts at 7 ¶ 18.

On April 19, 2012, the plaintiff "notified her first line supervisor, . . . Lascell, by e[]mail . . . that she intended to retire in September 2012 and could not accept a transfer to fill the Naples, Italy vacancy."  Def.'s Facts ¶ 19; see Pl.'s Facts at 7–8 ¶ 19.  The plaintiff then "submitted a request to . . . Lascell for annual leave during almost the entirety of August and September 2012[,]" which he "initially approved[.]"  Def.'s Facts ¶ 20; see Pl.'s Facts at 8 ¶ 20.  On May 14, 2012, "[the p]laintiff [ ] made initial contact . . . with an Equal Employment Opportunity [('EEO')] counselor regarding her January 5, 2012 selected transfer[,]" as well as other matters.  Def.'s Facts ¶ 21; see Pl.'s Facts at 8 ¶ 21; Def.'s Resp. to Pl.'s Facts ¶ 21.

"Despite two [previous] denials of her reconsideration requests, on June 31, 2012, Deputy Assistant Direct John Hogan [ ] denied [another] . . . reconsideration request" submitted by the plaintiff.  Def.'s Facts ¶ 22; see Pl.'s Facts at 8 ¶ 22.  According to NCIS policy, "'where employees desire assignment to a specific location, whether it involves remaining in their current location or moving to a new duty location, there are two primary options available to them: 1)

the transfer process, or[] 2) a Humanitarian/Hardship request.'" Def.'s Facts ¶ 23; see Pl.'s Facts

at 8–9 ¶ 23. "[The p]laintiff did not submit a Humanitarian/Hardship request and [even] if her

March 20, 2012 request had been considered [a Humanitarian/Hardship] request, the reasons she

outlined therein did not qualify for [that] exemption." Def.'s Facts ¶ 24; see Pl.'s Facts at 9 ¶ 24.

"On or around July 18, 20[1]2, [the p]laintiff e[]mailed her EEO counselor[,]" Def.'s Facts ¶ 25;

see Pl.'s Facts at 9 ¶ 25, regarding alleged age discrimination in the transfer decision, see Def.'s

Mot., Ex. 9 (Email from Dorian Van Horn to Michelle Baker (July 18, 2012) ("July 18, 2012

Email")) at 1, ECF No. 75-10, and "[o]n or about July 24, 2012, [ ] Hogan received an e[]mail

from the EEO [c]ounselor notifying him that [the p]laintiff [had] submitted an EEO

complaint[,]" Def.'s Facts ¶ 27; see Pl.'s Facts at 10 ¶ 27.

     The plaintiff "did not report to Naples, Italy[,] for the ASAC position[,]" Def.'s Facts ¶

29; see Pl.'s Facts at 11–12 ¶ 29, and instead was sent "on a temporary duty assignment . . . in

Norfolk, Virginia[,]" Def.'s Facts ¶ 30; see Pl.'s Facts at 12 ¶ 30. Once it was clear that the

plaintiff would be temporarily reassigned, her supervisor at [the] NCIS Headquarters, Lascell,

"cancelled [the p]laintiff's leave requests[,]" Def.'s Facts ¶ 26; see Pl.'s Facts at 9–10 ¶ 26, and

once she was reassigned, her "new supervisor at her temporary assigned duty assignment in

Norfolk, Virginia, approved her previously cancelled leave requests." Def.'s Facts ¶ 31; see Pl.'s

Facts at 12 ¶ 31. "On October 17, 2012, [the] NCIS announced the selection of [the p]laintiff to

[an] ASAC position in Great Lakes, Illinois, effective November 19, 2012[,]" Def.'s Facts ¶ 32;

see Pl.'s Facts at 13 ¶ 32, and the plaintiff subsequently "retired effective October 31, 2012[,]

and never reported to the Great Lakes position." Def.'s Facts ¶ 34; see Pl.'s Facts at 13 ¶ 34.

**B.**    **Procedural Background**

     On January 7, 2018, the plaintiff filed her Complaint in this case, see Complaint

("Compl.") at 1, ECF No. 1, and on October 24, 2018, she filed a motion to amend her Complaint. see Plaintiff Dorian Van Horn's Motion for Leave to File Amended Complaint at 1, ECF No. 21.  The Court subsequently granted her motion and accepted her Amended Complaint as filed.  See Order at 2 (Dec. 18, 2018), ECF No. 27; Am. Compl. at 1.  On October 4, 2018, the defendant filed a motion for judgment on the pleadings or, in the alternative for summary judgment, see Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment at 1, ECF No. 19, which the Court granted in part and denied in part on March 6, 2020.  See Order at 1 (Mar. 6, 2020), ECF No. 45.  The Court granted the motion "to the extent it s[ought] to dismiss the plaintiff's hostile work environment claim in Count One of the plaintiff's Amended Complaint" and denied the motion in all other respects.  Id.; see supra note 1.  Thereafter, the defendant filed his Answer to the Complaint on March 20, 2020, see Answer to Amended Complaint and Affirmative Defenses ("Answer") at 1, ECF No. 46, and, after the parties unsuccessfully attempted to resolve the case via mediation, the Court held an initial scheduling conference on August 31, 2020, see Order at 1 (Sept. 1, 2020), ECF No. 53.  After the parties concluded discovery on December 3, 2021, see Order at 1 (Nov. 2, 2021), ECF No. 71, the defendant filed his motion for summary judgment on June 9, 2022, see Def.'s Mot. at 1, the plaintiff filed her opposition on July 25, 2022, see Pl.'s Opp'n at 1, and the defendant filed his reply on October 17, 2022, see Def.'s Reply at 1.

## II.    STANDARD OF REVIEW

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is

genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

### III.   ANALYSIS

The defendant argues that he is entitled to summary judgment on both the plaintiff's age discrimination and retaliation claims. See Def.'s Mot. at 1. Regarding the plaintiff's discrimination claim, the defendant argues that the plaintiff "failed to timely [administratively]

exhaust her claim" and, even if she had exhausted her administrative remedies, "the [defendant] had legitimate and non-discriminatory reasons for selecting [the p]laintiff" for a transfer, which the plaintiff "cannot show . . . were pretext for unlawful discrimination."  Def.'s Mem. at 19. Regarding the plaintiff's retaliation claim, the defendant argues that "[the p]laintiff [cannot] demonstrate that the [defendant] retaliated against [her] after she engaged in EEO activity."  Id. In response, the plaintiff argues that "there are material facts in dispute that preclude summary judgment in this case" and that "[the d]efendant engaged in discrimination and retaliation in violation of the ADEA by its forced transfers of [the p]laintiff and constructive discharge on account of age and retaliation."[4]  Pl.'s Opp'n at 2.  The Court will first address whether the plaintiff has timely exhausted her administrative remedies, before the turning to the merits of the plaintiff's discrimination and retaliation claims.

---

[4] The plaintiff also argues that, as a preliminary matter, "[the d]efendant is precluded from seeking summary judgment as it previously sought summary judgment, which was denied in part."  Pl.'s Opp'n at 1.  In support of this argument, the plaintiff asserts that the defendant's motion "violates the law-of-the-case doctrine[,]" id. at 7, which provides that "the same issue presented a second time in the same case in the same court should lead to the same result[.]" Aref v. Holder, 953 F. Supp. 2d 133, 143–44 (D.D.C. 2013).  However, as the defendant correctly notes, see Def.'s Reply at 1–2, consideration of the defendant's motion does not violate the law-of-the-case doctrine because the Court's denial in part of the defendant's previous motion for judgment on the pleadings, or in the alternative, for summary judgment, see Order at 1 (Mar. 6, 2020), was not appealable.  Under the law-of-the-case doctrine, a "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 250 (D.C. Cir. 1987) (emphasis added).  Thus, for purposes of this doctrine, a party cannot be said to have waived the right to challenge a decision unless that decision was appealable.  See id.  "A denial of a motion for summary judgment typically is not a final order, so it is not appealable[,]" Pub. Citizen v. U.S. Dist. Court for D.C., 486 F.3d 1342, 1343 (D.C. Cir. 2007),  unless "it is accompanied by a final order disposing of all issues before the district court." Id. (quoting Jones-Hamilton Co. v. Beazer Materials & Servs., Inc., 973 F.2d 688, 694 n.2 (9th Cir. 1992)).  Here, the Court's March 6, 2020 Order granting in part and denying in part the defendant's prior motion did not "dispos[e] of all issues before the [ ] [C]ourt[,]" id. at 1345; see Order at 1 (Mar. 6, 2020), and therefore, the partial denial of the defendant's prior motion for summary judgment was not appealable.  See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 296 (D.C. Cir. 2006) ("[A]s a general rule, [the D.C. Circuit] lack[s] jurisdiction to hear an appeal of a district court's denial of summary judgment, partial or otherwise.").  Accordingly, the defendant's motion does not implicate the law-of-the-case doctrine.

**A.      Whether the Plaintiff Has Timely Exhausted Her Administrative Remedies**

The defendant argues as a preliminary matter that "[the p]laintiff utilized the EEO administrative process but failed to timely exhaust her ADEA discrimination/disparate treatment claim[,]" Def.'s Mem. at 21, in light of the fact that she "made initial contact with an EEO counselor on May 14, 2012[,]" more than forty-five days after the "NCIS's notification of its employment decision" and the plaintiff's "reasonable suspicion of discrimination[,]" both of which arose on or about January 5, 2012. Id.  In response, the plaintiff argues that her "complaint of discriminatory acts to the NCIS EEO officer on or about May 14, 2012, [ ] was timely[,]" Pl.'s Opp'n at 12, because she did not develop a reasonable suspicion of discrimination until "early May 2012 by connecting the dots of discriminatory behavior[,]" id. at 11, and "[t]h[e] [forty-five]-day limitation period is [only] 'triggered [when] a complainant reasonably suspects discrimination[,]'" id. at 12 (quoting Fortune v. Holder, 767 F. Supp. 2d 116, 118 (D.D.C. 2011)) (fifth alteration in original).

In the context of a claim filed pursuant to the ADEA, a plaintiff "has two means of pursuing his [or her] age discrimination claim." Chennareddy v. Bowsher, 935 F.2d 315, 318 (D.C. Cir. 1991).  "[A] federal employee has the option of bypassing the administrative process altogether and suing directly in federal court, subject to certain notice requirements[,]" Lawson v. Sessions, 271 F. Supp. 3d 119, 133 (D.D.C. 2017), or "[a]lternatively, an ADEA plaintiff 'may [opt to] invoke the [Equal Employment Opportunity Commission's ('] EEOC[')] administrative process, and then sue if dissatisfied with the results.'" id. (quoting Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003)).  When proceeding under the second option, an employee "must initiate contact with a[n EEO c]ounselor within [forty-five] days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within [forty-five] days of the

effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Although the timely exhaustion

requirement in ADEA cases is not jurisdictional, see Menominee Indian Tribe of Wis. v. United

States, 614 F.3d 519, 527 (D.C. Cir. 2010) ("[N]either Title VII nor the ADEA incorporates a

jurisdictional exhaustion requirement."), "[t]he D.C. Circuit has [ ] repeatedly recognized that

[an] exhaustion defense 'is similar to a statute of limitations.'" Achagzai v. Broad. Bd. of

Governors, 170 F. Supp. 3d 164, 174 (D.D.C. 2016) (quoting In re James, 444 F.3d 643, 647

(D.C. Cir. 2006)).  And, "[a]s such, the [ ] ADEA exhaustion requirement[] [is] properly viewed

as [an] affirmative defense[], and thus 'the defendant bears the burden of pleading and

proving' the defense."  Achagzai, 170 F. Supp. 3d at 174 (quoting Bowden v. United States, 106

F.3d 433, 437 (D.C. Cir. 1997)).

      Here, "[o]n January 5, 2012, [the] NCIS released a General Administration Notice

formally announcing that [the p]laintiff had been selected for transfer to Naples, Italy"—i.e., the

first alleged adverse employment actions in this case—"with a reporting date of June 2012."

Def.'s Facts ¶ 16; see Pl.'s Facts at 7 ¶ 16.  The plaintiff subsequently "made initial contact . . .

with an [EEO] counselor regarding her January 5, 2012 selected transfer" on May 14, 2012.

Def.'s Facts ¶ 21; see Pl.'s Facts at 8 ¶ 21; Def.'s Resp. to Pl.'s Facts ¶ 21.  Although the

defendant correctly notes that the plaintiff "delayed her contact with the EEO office until five

months" after the notice of her transfer was issued, Def.'s Mem. at 21, the date of the notice is

not the relevant date for purposes of calculating whether the plaintiff met the timely exhaustion

requirements under the ADEA.  Rather, "the pertinent date for determining the timeliness of [the

plaintiff's] EEO contact is . . . the effective date of the personnel action challenged, and not the

date on which [the plaintiff] became aware of what that personnel action would be."  Felder v.

Johanns, 595 F. Supp. 2d 46, 62 (D.D.C. 2009) (emphasis in original); see 29 C.F.R. §

1614.105(a)(1) ("An aggrieved person must initiate contact with a[n EEO c]ounselor[,] . . . in the case of personnel action, within [forty-five] days of the effective date of the action."); see also Felder, 595 F. Supp. 2d at 62 ("[S]everal [other members of this Court] have reasoned that as the plain language of the regulations indicates, the [forty-five]-day filing period begins to run from the effective date of the [personnel] action, not from notice of that action."). Thus, the plaintiff's forty-five-day time limit to initiate contact with an EEO counselor began not on January 5, 2012, when notice of her impending transfer was issued, but instead in June 2012, the effective date of her transfer. See Def.'s Facts ¶ 16; see Pl.'s Facts at 7 ¶ 16. In other words, "[t]he fact that the plaintiff[] had notice of the [personnel action] in [January 2012] has no bearing on this timeliness analysis because it is not until the effective date of the personnel action that the [forty-five]-day window opened." James v. England, 332 F. Supp. 2d 239, 246 (D.D.C. 2009). Accordingly, the Court concludes that the defendant has failed to meet his burden to show that the plaintiff failed to timely exhaust her administrative remedies.[5]

## B.    Whether the Plaintiff Has Provided Sufficient Evidence of Discrimination or Retaliation

Having concluded that the defendant has not met his burden to show that the plaintiff failed to timely exhaust her administrative remedies, the Court will now address whether the plaintiff has provided sufficient evidence of discrimination or retaliation. The defendant argues

---

[5] The Court notes that the plaintiff's argument that "[t]h[e] [forty-five]-day limitation period is [only] 'triggered [when] a complainant reasonably suspects discrimination[,]'" Pl.'s Opp'n at 12 (quoting Fortune, 767 F. Supp. 2d at 118), misconstrues the case law that she cites in support of this contention. "[N]otice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue. . . . On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." Fortune, 767 F. Supp. 2d at 122 (quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 558 (10th Cir. 1994)). Thus, the fact that the parties dispute the date on which the plaintiff reasonably suspected discrimination is immaterial because the relevant date for purposes of the forty-five-day requirement was the effective date of the plaintiff's transfer, i.e. June 2012. See id. at 122–23 (ultimately concluding that relevant date for purposes of the plaintiff's timely exhaustion requirement was his termination, not the date on which he became aware of potential discriminatory motive).

that he "has established legitimate, non-discriminatory reasons for" the adverse actions at issue in this case, Def.'s Mem. at 28, and "[the p]laintiff has entirely failed to offer any evidence that could cast material doubt upon [the d]efendant's legitimate non-discriminatory bases[,]" id. at 31.  In response, the plaintiff argues that because she and other employees experienced "differing treatment" based upon their age, Pl.'s Opp'n at 17, "[the d]efendant has a pattern of seeking out older agents for involuntary transfers[,]" id. at 18, and "the transfers and other acts in violation of NCIS policies and procedures demonstrate unlawful actions in violation of the ADEA[,]" id.  Thus, the plaintiff contends that "there is sufficient [ ] evidence that demonstrates [that the p]laintiff [ ] was subjected to pretextual actions by [the] NCIS's involuntary transfers and other acts."  Id.  For the following reasons, the Court concludes that it must dismiss both the plaintiff's discrimination and retaliation claims.

When a plaintiff brings a claim of discrimination or retaliation under the ADEA and relies on circumstantial evidence to establish an alleged unlawful employment action, as the plaintiff does here, see generally Pl.'s Opp'n, the Court analyzes the claim under the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green.  See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) ("The McDonnell Douglas framework applies to both Title VII and ADEA claims.").  Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing her prima facie case of discrimination or retaliation.  See 411 U.S. at 802; Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015); see also Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated [or retaliated] against the employee[,]" and "[t]o rebut this

presumption, the employer must articulate a legitimate, non-discriminatory [or non-retaliatory] reason for its action."  Lewis v. District of Columbia, 653 F. Supp. 2d 64, 72 (D.D.C. 2009) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

Furthermore, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory [or non-retaliatory] reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas."  Brady v. Office of the Sergeant at Arms, U.S. House of Representatives, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original).  In other words, if the defendant provides legitimate, non-discriminatory, and non-retaliatory reasons for the adverse employment action at issue, "the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'"  Brady, 520 F.3d at 493 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993)).  The plaintiff must then prove that the defendant's proffered reason was a pretext for discrimination or retaliation, see McDonnell Douglas, 411 U.S. at 805, and produce "sufficient evidence for a reasonable jury to find that the employer's asserted non[-]discriminatory [or non-retaliatory] [ ] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] [ ] against the employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

Here, the plaintiff alleges one adverse employment action that relates solely to her discrimination claim—namely, her transfer to the GS-14 ASAC position in Naples, Italy, see Def.'s Facts ¶16; Pl.'s Facts at 7 ¶ 16; Def.'s Mot., Ex. 23 (Agent Transfer Matter – Senior Management Assignments (GS-14)) at 2, ECF No. 75-24, one adverse employment action that relates solely to her retaliation claim—namely, the cancellation of her leave requests for August

and September 2012, see Def.'s Facts ¶¶ 20, 26; Pl.'s Facts at 8–10 ¶¶ 20, 26, and three adverse employment actions that relate to both her discrimination and retaliation claims—namely, her temporary transfer to a position in Norfolk, Virginia, see Def.'s Facts ¶ 30; Pl.'s Facts at 12 ¶ 30; her transfer to a GS-14 ASAC position in Great Lakes, Illinois, see Def.'s Facts ¶¶ 32–33; Pl.'s Facts at 13 ¶¶ 32–33; and her retirement, which she alleges amounted to her constructive discharge, see Def.'s Facts ¶ 34; Pl.'s Facts at 13 ¶ 34.  See generally Pl.'s Opp'n at 14–22.  The Court will address the plaintiff's allegations as to each of these discrete alleged adverse employment actions in turn: (1) the plaintiff's transfers to Naples, Italy, and Great Lakes Illinois; (2) the plaintiff's temporary transfer to Norfolk, Virginia; (3) the plaintiff's alleged constructive discharge claim; and (4) the cancellation of the plaintiff's leave requests.

**1.  The Plaintiff's Transfers to Naples, Italy, and Great Lakes, Illinois**

First, regarding the plaintiff's transfers to Naples Italy, see Def.'s Facts ¶ 16; Pl.'s Facts at 7 ¶ 16, and later to Great Lakes, Illinois, see Def.'s Facts ¶ 32; Pl.'s Facts at 13 ¶ 32, the plaintiff argues that "there are numerous material issues of fact in dispute concerning the age discriminatory reasons behind the forced transfers of [the p]laintiff in 2012[,]" Pl.'s Opp'n at 14. Specifically, the plaintiff contends that she was "forced [to] transfer[] to . . . Great Lakes, Ill[inois,] for retaliatory reasons following her EEO activity at [the] NCIS."  Id. at 7.  However, for the following reasons, the Court concludes that neither of these transfers constitutes a cognizable adverse employment action for purposes of the plaintiff's discrimination and retaliation claims.

"An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Douglas v. Donovan, 559 F.3d 549, 552 (D.C.

13

Cir. 2009) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).   "A 'lateral

transfer'—that is, a transfer involving 'no diminution in pay and benefits'—may[, in certain

situations,] qualify as a materially adverse employment action[.]"  Mamantov v. Jackson, 898 F.

Supp. 2d 121, 128 (D.D.C. 2012) (quoting Geleta v. Gray, 645 F.3d 408, 411 (D.C. Cir. 2011)).

However, where there is merely an "attempt . . . to transfer [the plaintiff] to a [different

position]," but "the transfer never occur[s,] . . . [the plaintiff] suffer[s] no adverse action as the

result of the attempt."  Glenn v. Williams, No. 98-cv-1278 (CKK), 2006 WL 401816, at *29

(D.D.C. Feb. 21, 2006).  In other words, where a personnel action never takes effect, it "result[s]

in no materially adverse consequences . . . such that a reasonable trier of fact could find

objectively tangible harm."  Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

Here, "[o]n January 5, 2012, [the] NCIS released a General Administration Notice

formally announcing that [the p]laintiff had been selected for transfer to Naples, Italy[,] for an

ASAC position, with a reporting date of June 2012."  Def.'s Facts ¶ 16; see Pl.'s Facts at 7 ¶ 16.

However, the plaintiff's transfer never actually occurred because she "did not report to Naples,

Italy[,] for the ASAC position[,]" Def.'s Facts ¶ 29; see Pl.'s Facts at 11–12 ¶ 29, and instead

was sent "on a temporary duty assignment . . . in Norfolk, Virginia[,]" Def.'s Facts ¶ 30; see Pl.'s

Facts at 12 ¶ 30.  Similarly, although "[o]n October 17, 2012, [the] NCIS announced the

selection of [the p]laintiff to [an] ASAC position in Great Lakes, Illinois, effective November 19,

2012[,]" Def.'s Facts ¶ 32; see Pl.'s Facts at 13 ¶ 32, the plaintiff "retired effective October 31,

2012 and [thus] never reported to the Great Lakes position[,]" Def.'s Facts ¶ 34; see Pl.'s Facts at

13 ¶ 34.  Therefore, because these transfers never occurred, these "employment decision[s] do[]

not rise to the level of [ ] actionable adverse action[s]" because they produced no "tangible

change in the duties or working conditions constituting a material employment disadvantage."

Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (internal quotation marks omitted). Thus, even assuming that the defendant has alleged legitimate, non-discriminatory, and non-retaliatory reasons for these transfers, the Court need not conduct an analysis regarding pretext as to these two transfers because the plaintiff has failed to allege sufficient facts to show that they constitute adverse employment actions.  See Brady, 520 F.3d at 494 ("[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." (first emphasis added)).  Accordingly, the Court must grant the defendant's motion as to plaintiff's allegations concerning her June 2012 transfer to Naples, Italy, and her October 2012 transfer to Great Lakes, Illinois.

   **2.   The Plaintiff's Temporary Transfer to Norfolk, Virginia**

   Second, regarding the plaintiff's temporary transfer to Norfolk, Virginia, following her failure to report to the ASAC position in Naples, Italy, see Def.'s Facts ¶¶ 29–30; see Pl.'s Facts at 11–12 ¶¶ 29–30, the plaintiff alleges that she "was sent for temporary assigned duty by [the] NCIS without request to Norfolk, Virginia, where [she] was not given any meaningful work by [the] NCIS, [and] was stationed to sit in a conference room as there was no office for her," Pl.'s Opp'n at 18.[6]  However, the Court concludes that this transfer also does not amount to an adverse employment action for purposes of the plaintiff's claims.

---

[6] The plaintiff also alleges that this was a GS-13 position, "which downgraded [her] from GS-14."  Pl.'s Opp'n at 18.  However, this is clearly controverted by the record—namely, the Notice of Personnel Action regarding the plaintiff's retirement, filed while she was stationed in Norfolk, Virginia, which indicates that she remained at the GS-14 pay grade at that time.  See Def.'s Mot., Ex. 24 (Notice of Personnel Action (Oct. 31, 2012)) at 1, ECF No. 75-25 (indicating "14" under "Grade or Level").  Therefore, there is no genuine dispute of material fact as to the plaintiff's GS-14 pay grade during her assignment in Norfolk, Virginia.

As noted earlier, "[a]n employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." Stewart, 275 F.3d at 1134 (internal quotation marks omitted). And, "[a] 'lateral transfer' . . . may qualify as a materially adverse employment action if it 'result[s] in materially adverse consequences affecting the terms, conditions, or privileges of the plaintiff's employment.'" Mamantov, 898 F. Supp. 2d at 128 (quoting Geleta, 645 F.3d at 411). However, "a temporary or 'lateral transfer or the denial thereof, without more, does not constitute an adverse employment action.'" Singleton v. Potter, 402 F. Supp. 2d 12, 39 (D.D.C. 2005) (quoting Stewart, 275 F.3d at 1135). "Transfers to . . . less desirable[] locations 'without more[,] do not constitute adverse employment actions[,]" Douglas v. D.C. Hous. Auth., 981 F. Supp. 2d 78, 89 (D.D.C. 2013) (quoting Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 282 (D.D.C. 2011)), but a transfer which results in "a reduction in responsibilities[,]" Loya v. Sebelius, 840 F. Supp. 2d 245, 256 (D.D.C. 2012), "significantly different responsibilities," Taylor, 350 F.3d at 1293, or "otherwise affect[s] a term or condition of [the plaintiff's] employment[,]" Lee v. Mabus, 955 F. Supp. 2d 33, 47 (D.D.C. 2013), may amount to an adverse employment action. Moreover, "the plaintiff carries the burden of establishing . . . [that he or] she suffered a cognizable adverse employment action[.]" Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1113 (D.C. Cir. 2016).

Here, the plaintiff describes her temporary transfer to Norfolk, Virginia, as "a do-nothing position[,]" Pl.'s Opp'n at 21, to which she was transferred "despite the fact that there was no work for [her] . . . , she was not given any meaningful work by [the] NCIS to perform while [there], [and she] was stationed to sit in a conference room as there was no office for her, which was unusual," id. at 21–22. Although a transfer which results in "a reduction in

16

responsibilities[,]" Loya, 840 F. Supp. 2d at 256, may amount to an adverse employment action,

a "temporary reduction [in work] is insufficient to constitute an adverse employment action[,] . .

. particularly where . . . the alleged reduction had no effect on [the plaintiff's] pay or benefits[,]"

Ng v. Lahood, 952 F. Supp. 2d 85, 96 (D.D.C. 2013) (emphasis added).  In this case, the

plaintiff's assignment in Norfolk, Virginia, was a lateral transfer, see supra note 6 (describing the

fact that, when the plaintiff was transferred to Norfolk, Virginia, she was transferred at the same

pay grade, i.e., laterally), and a temporary assignment, only lasting approximately four months

from soon after June 30, 2012, to her retirement in October 2012. See Def.'s Facts ¶ 30 (stating

that the plaintiff was transferred to Norfolk, Virginia, after she did not report to her ASAC

position in Naples, Italy); Pl.'s Facts at 12 ¶ 30; Def.'s Mot., Ex. 7 (Declaration of John A.

Hogan ("Hogan Decl.")) ¶ 27, ECF No. 75-8 (specifying that the plaintiff "did not report as

required to the Naples, Italy ASAC position on June 30, 2012"); Def.'s Facts ¶ 32 ("On October

17, 2012, [the] NCIS announced the selection of [the p]laintiff to [an] ASAC position in Great

Lakes, Illinois, effective November 19, 2012."); id. ¶ 34 (stating that the plaintiff "retired

effective October 31, 2012"); see also Pl.'s Facts at 13 ¶¶ 32, 34.

Thus, even if the plaintiff proved that her work was reduced while she was in Norfolk,

see Pl.'s Opp'n at 18–19, 21, this reduction was "insufficient to constitute an adverse

employment action[.]"  Ng, 952 F. Supp. 2d at 96 (finding a plaintiff's reduction in work did not

constitute an adverse employment action where the plaintiff was given a "sixty-day assignment"

and asserted that "there was little if any work waiting for him upon his arrival").  Accordingly,

the Court must grant the defendant's motion as to the plaintiff's allegations concerning her

temporary transfer to Norfolk, Virginia.

### 3.  The Plaintiff's Alleged Constructive Discharge Claim

Third, regarding the plaintiff's alleged constructive discharge, she argues that she can

show her retirement amounted to a constructive discharge because she "was subjected to

multiple discriminatory forced transfers that uprooted her life and created an intolerable

workplace."  Pl.'s Opp'n at 18–19.  However, the Court concludes that the plaintiff has not met

her burden to establish that she was constructively discharged.

"A constructive discharge can serve as an adverse [employment] action."  Hill v. Gray,

28 F. Supp. 3d 47, 60 (D.D.C. 2014).  However, "[a]n employee's resignation or retirement is

presumed to be voluntary and not an adverse action, unless the employee overcomes the

presumption by showing that the resignation or retirement was involuntary, and therefore

qualifies as a constructive discharge."  Id. at 61.  "The test for constructive discharge is an

objective one: whether a reasonable person in the employee's position would have felt compelled

to resign under the circumstances."  Aliotta v. Bair, 614 F.3d 556, 566 (D.C. Cir. 2010).  And,

"[t]o establish . . . constructive discharge, [a] plaintiff must establish that the employer

deliberately made working conditions intolerable and drove [him or] her into an involuntary

resignation [or retirement]."  Downey v. Isaac, 622 F. Supp. 1125, 1132 (D.D.C. 1985), aff'd,

794 F.2d 753 (D.C. Cir. 1986).  Moreover, "[c]onstructive discharge [ ] requires a finding of

discrimination and the existence of certain 'aggravating factors.'"  Mungin v. Katten Muchin &

Zavis, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (quoting Clark v. Marsh, 665 F.2d 1168, 1174

(D.C. Cir. 1981) (concluding that "a continuous pattern of discriminatory treatment

encompassing deprivation of opportunities for promotion, lateral transfer, and increased

educational training, existing over a period of several years" constituted sufficient "aggravating

factors" sufficient to support a finding of constructive discharge)).

Here, the plaintiff "retired effective October 31, 2012[,]" Def.'s Facts at 5, ¶ 34; see Pl.'s

Facts at 13 ¶ 34, and alleges that this amounted to "involuntary retirement[,]" Pl.'s Opp'n at 19,

due to "multiple discriminatory forced transfers[,]" id. at 18–19.[7]  However, as the Court has

previously noted, see supra Section III.B.2, "[t]ransfers to . . . less desirable[] locations 'without

more[,] do not constitute adverse employment actions[,]'" Douglas, 981 F. Supp. 2d at 89

(quoting Ndondji, 768 F. Supp. 2d at 282).  Thus, it follows that an allegation of constructive

discharge, founded upon the occurrence of multiple lateral transfers which do not constitute

adverse employment actions themselves, see Pl.'s Opp'n at 19 ("Here, the material facts in

dispute demonstrate that [the p]laintiff was subjected to forced transfers three [ ] times, when

[the d]efendant was aware [that the p]laintiff lived in the Washington, DC area and had [a]

spouse working on a fellowship in Washington, DC."), would also not amount to an adverse

employment action.  See Douglas, 981 F. Supp. 2d at 89.  Furthermore, even if the Court

concluded that these lateral transfers constituted adverse employment actions, the plaintiff has

not alleged sufficient facts to demonstrate a workplace so "intolerable" as to "dr[i]ve her into an

involuntary [retirement,]" Downey, 622 F. Supp. at 1132.  Compare, e.g., Pl.'s Opp'n at 18–20

(asserting the plaintiff's retirement amounted to a constructive discharge based only upon her

multiple lateral transfers), with Clark, 665 F.2d at 1173 (concluding that the plaintiff's retirement

---

[7] The plaintiff also makes a cursory reference to the defendant's "creat[ion] of an intolerable workplace."  Pl.'s Opp'n at 19.  However, to the extent that the plaintiff alleges that, once temporarily transferred to Norfolk, Virginia, she was "left . . . with no work . . . [and] stationed to sit in a conference room as there was no office for her," id., the Court concludes that these alleged conditions are not so intolerable that they would "cause a reasonable person in the [plaintiff]'s position . . . [to] fe[el] compelled to resign under the circumstances[,]" Aliotta, 614 F.3d at 566.  This is because, as the Court has previously noted, see supra Section III.B.2, a "temporary reduction [in work] is insufficient to constitute an adverse employment action[,] . . . particularly where . . . the alleged reduction had no effect on [the plaintiff's] pay or benefits[,]" Ng, 952 F. Supp. 2d at 96.  Thus, just as the Court concludes that these working conditions at the plaintiff's Norfolk, Virginia assignment do not rise to the level of an adverse employment action, see supra Section III.B.2, the Court also concludes that these conditions do not amount to an "intolerable workplace[,]" Pl.'s Opp'n at 19, sufficient to bolster her assertion that her retirement constituted a constructive discharge, see Aliotta, 614 F.3d at 566.

amounted to a constructive discharge where there existed "a continuous pattern of discriminatory treatment encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years"); see also Forkkio, 306 F.3d at 1131 (contrasting "[p]urely subjective injuries, such as dissatisfaction with a reassignment," which "are not adverse actions[,]" with "'reassignment with significantly different responsibilities, or . . . a significant change in benefits[,]'" which "generally indicate[] an adverse action" (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (third alteration in original)).

Therefore, the plaintiff has not "overcome[] the presumption . . . that [her] . . . retirement was []voluntary[,]" Hill, 28 F. Supp. 3d at 60, and the Court concludes that she has failed to adequately allege constructive discharge as an adverse employment action in this case. Accordingly, the Court must grant the defendant's motion as to plaintiff's constructive discharge allegations.

### 4. The Cancellation of the Plaintiff's Leave Requests

Finally, regarding the plaintiff's cancelled leave requests, see Def.'s Facts ¶ 26; Pl.'s Facts at 9–10 ¶ 26, she argues that "[the d]efendant's management representatives . . . cancelled [the p]laintiff's leave when [she] complained to the NCIS EEO office about discrimination[,]" Pl.'s Opp'n at 7, and thus, that these cancelled leave requests were retaliatory, see id. For the following reasons, the Court concludes that the plaintiff has failed to allege a prima facie case of retaliation based upon her cancelled leave requests.

As the Court has previously noted, see supra Section III.B, once a defendant provides a legitimate, non-retaliatory reason for the adverse employment action at issue, "the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus

'disappear[s]' and 'drops out of the picture[,]'" <u>Brady</u>, 520 F.3d at 493 (quoting <u>St. Mary's</u> <u>Honor Ctr.</u>, 509 U.S. at 510, 511).  The plaintiff must then prove that the defendant's proffered reason was a pretext for retaliation, <u>see</u> <u>McDonnell Douglas</u>, 411 U.S. at 805, and produce "sufficient evidence for a reasonable jury to find that the employer's asserted non[-retaliatory] [ ] reason was not the actual reason and that the employer intentionally [retaliated] [ ] against the employee[,]" <u>Walker</u>, 798 F.3d at 1092 (internal quotation marks omitted).  However, this Circuit has ruled that a court "can resolve that question in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of [his or] her [prima facie] case[.]"  <u>Baylor v. Powell</u>, 847 F. App'x 7, 8 (D.C. Cir. 2021) (quoting <u>Taylor v. Solis</u>, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009)).

To establish a prima facie case of retaliation, "[the] plaintiff must show: 1) that [he or she] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two."  <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 86 (D.C. Cir. 1985).  Regarding the third component, "[a] plaintiff can establish [a] causal connection . . . 'by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity[,]'" <u>Moran v.</u> <u>U.S. Capitol Police Bd.</u>, 887 F. Supp. 2d 23, 35 (D.D.C. 2012) (quoting <u>Mitchell</u>, 759 F.2d at 86), <u>i.e.</u>, the "'knowledge' and 'timing' requirements." <u>Id.</u>  Furthermore, "[t]o fulfill the knowledge requirement, the official responsible for ordering the employee's adverse employment action must have known about the protected activity." <u>Id.</u>; <u>see</u> <u>Clark Cnty. Sch.</u> <u>Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (concluding that the plaintiff had not established a prima facie case of retaliation where "there [was] no indication that" the official who formally

proposed the plaintiff's adverse employment action "knew about [the plaintiff's protected activity]").

Here, the defendant has provided a legitimate, non-retaliatory reason for the plaintiff's cancelled leave requests—specifically, that "upon the advice of Human Resources, Special Agent Lascell cancelled [the p]laintiff's leave requests because he would no longer serve as her supervisor during the period of the annual leave request for August and September 2012[,]" in light of the plaintiff's impending transfer to Norfolk, Virginia.  Def.'s Mem. at 15–16.  And, the plaintiff has failed to allege any facts showing that Lascell—the relevant decisionmaker for purposes of the cancellation of the plaintiff's leave requests, see Def.'s Facts ¶¶ 20, 26; Pl.'s Facts at 8–10 ¶¶ 20, 26—knew of the plaintiff's EEO activity at the time when he cancelled the plaintiff's leave requests.  See generally Pl.'s Facts; Pl.'s Opp'n.  Rather, the only official identified as being aware of the plaintiff's EEO activity during the relevant time period was Deputy Assistant Director John Hogan, see Def.'s Facts ¶ 27; Pl.'s Facts at 10 ¶ 27; see generally Pl.'s Facts; Pl.'s Opp'n, who is not alleged as having played any role in the cancellation of the plaintiff's leave requests, see Def.'s Facts ¶¶ 20, 26; Pl.'s Facts at 8–10 ¶¶ 20, 26; see generally Pl.'s Facts; Pl.'s Opp'n.

Thus, there are no facts upon which a factfinder could conclude that "the official responsible for ordering the [cancellation of the plaintiff's leave requests] must have known about [her] protected activity."  Moran, 887 F. Supp. 2d at 35.  Therefore, because the plaintiff has not alleged facts which "fulfill the knowledge requirement[,]" Moran, 887 F. Supp. 2d at 35, of a prima facie case of retaliation, the Court must grant the defendant's motion as to the plaintiff's allegations concerning the cancellation of her leave requests.  See Baylor, 847 F. App'x at 8 (noting that a court "can resolve [the third step in the McDonnell Douglas burden-

shifting analysis] in favor of the employer based either upon the employee's failure to rebut its explanation [for the adverse employment action] or upon the employee's failure to prove an element of [his or] her [prima facie] case") (quoting Taylor, 571 F.3d at 1320 n.*)). And, because the plaintiff has failed to allege facts from which a reasonable jury could conclude that she suffered adverse employment actions as a result of her transfers, or as the result of a constructive discharge, see Brady, 520 F.3d at 494 (treating the question of whether a plaintiff has suffered an adverse employment action as a threshold issue)—which, combined with the plaintiff's cancelled leave requests, form the basis for the plaintiff's discrimination and retaliation claims—the Court concludes that it must grant the defendant's motion as to all of the plaintiff's remaining claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion for summary judgment.

**SO ORDERED** this 23rd day of June, 2023.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.