# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| DORIAN VAN HORN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-38 (RBW) |
| | ) | |
| HUNG CAO, in his official | ) | |
| capacity as Acting Secretary, U.S. | ) | |
| Department of the Navy, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Dorian Van Horn, brings this civil action against the defendant, Hung Cao, in his official capacity as Acting Secretary of the United States Department of the Navy,[1] asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. § 633a (the "ADEA").[2]  See Amended Complaint ("Am. Compl.") ¶¶ 46–47, 52–59, ECF No. 21-2.  The plaintiff, a former employee of the Naval Criminal Investigative Services ("NCIS"), alleges that the defendant discriminated against her by involuntarily transferring her from a position at the NCIS headquarters in Washington, D.C. to a position in Naples, Italy.  See Am. Compl. ¶ 21. The plaintiff further alleges that when she complained about the transfer and refused to report to Naples, the defendant continued his discrimination and retaliated against her by transferring her

---

[1] Hung Cao is the current Acting Secretary of the Navy.  Therefore, he is automatically substituted for his predecsor, Richard V. Spencer, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The plaintiff also brought an ADEA hostile work environment claim.  See Amended Complaint ("Am. Compl.") ¶¶ 48–51, ECF No. 21-2.  However, on March 6, 2020, the Court granted the defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, ECF No. 19, "to the extent it s[ought] to dismiss the plaintiff's hostile work environment claim in Count One of the plaintiff's Amended Complaint."  Order at 1 (Mar. 6, 2020), ECF No. 45.

to Norfolk, Virginia and then Great Lakes, Illinois, which she alleges caused her to be constructively discharged from the NCIS. Id. ¶¶ 32–33, 58. The plaintiff also alleges that the defendant retaliated against her by cancelling her approved leave requests. Id. ¶¶ 31, 50.

On June 23, 2023, the Court issued a Memorandum Opinion granting the defendant's motion for summary judgment. See Memorandum Opinion at 1 (June 23, 2023), ECF No. 86. The plaintiff appealed this Court's dismissal to the Court of Appeals for the District of Columbia Circuit, which vacated in part the Court's decision and remanded the case for further consideration of the parties' submissions. Van Horn v. Del Toro, No. 23-5169, 2024 WL 4381186, at *1 (D.C. Cir. Oct. 3, 2024). On remand, the Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion for summary judgment on the claims remanded to this Court for its consideration.[3]

## I.   BACKGROUND

### A.   Factual Background

The Court set forth the factual background of this case in its prior Memorandum Opinion. See Memorandum Opinion at 2–4 (June 23, 2023). The Court will, however, briefly repeat the

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 75; (2) the Defendant's Statement of Material Facts as to Which There is No Genuine Dispute ("Def.'s Facts"), ECF No. 75-1; (3) the Defendant's Motion for Summary Judgment and Memorandum in Support Errata ("Def.'s Errata"), ECF No. 76; (4) the Defendant's Motion for Summary Judgment and Memorandum in Support Errata ("Def.'s 2d Errata"), ECF No. 77; (5) the Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 80; (6) the Plaintiff's Response to Defendant's Statement of Material Facts and Statement of Material Facts in Dispute ("Pl.'s Facts"), ECF No. 80-1; (7) the Plaintiff's Notice of Clarification ("Pl.'s Notice"), ECF No. 82; (8) the Reply in Further Support of Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 83; (9) the defendant's Combined [1] Reply to Plaintiff's Responses to Defendant's Statement of Material Facts and [2] Response to Plaintiff's Statement of Disputed Material Facts ("Def.'s Resp. to Pl.'s Facts"), ECF No. 83-1; (10) the Plaintiff's Supplemental Filing Regarding Defendant's Motion for Summary Judgment ("Pl.'s Suppl. Br."), ECF No. 95; (11) the Defendant's Supplemental Brief ("Def.'s Suppl. Br."), ECF No. 96; and (12) the Plaintiff's Notice of Supplemental Authority Regarding Defendant's Motion for Summary Judgment, ECF No. 98.

facts that remain relevant to the resolution of this matter on remand.  These facts are undisputed unless otherwise noted.[4]

The plaintiff began working for the NCIS as a special agent in 1987 and became eligible for retirement "at the end of July 2012, when she would have 25 years of service [with the NCIS]."[5]  Am. Compl. ¶¶ 9–10.  Throughout her employment with the NCIS, the plaintiff was subject to the NCIS's Mobility Program.  Def.'s Facts ¶ 5.  The NCIS's Mobility Program provides that it is "absolutely vital that [the] NCIS maintains a flexible workforce prepared to respond to mission requirements wherever they may occur" and, to that end, "all new hires in the [special agent] career field are required to sign a Mobility Agreement, acknowledging their understanding that one or more overseas assignments and periodic transfers within [the continental United States] will be required throughout their career."  Def.'s Mot. Exhibit ("Ex.") 4 (Special Agent Career Program) at § 13-12.

In 2012, the plaintiff was assigned to the "Criminal Investigations Directorate at NCIS Headquarters[,]"  Def.'s Facts ¶ 3; see Pl.'s Facts at 2 ¶ 3.  In January 2012, "[the] NCIS held a meeting of Agency executives," during which they "discussed [a] vacant Criminal ASAC ['Assistant Special Agent in Charge']  position in Naples, Italy."  Def.'s Mot. at 6 (citing id., Ex. 6 (Excerpts from Transcript of Deposition of John Hogan ("Hogan Tr.")) at 68:13–19, ECF No. 75-7; id., Ex. 7 (Declaration of John Hogan ("Hogan Decl.")) ¶¶ 6, 10, ECF No. 75-8).  Five special agents, ranging in age from 41 to 53, "voluntarily bid on the vacancy[,]" but the

---

[4] The defendant argues that the Court should not consider some of the plaintiff's factual statements because the plaintiff violated the Court's General Order by not furnishing precise citations to the portions of the record on which she relies for those statements.  Despite having had to expend an inordinate amount of time combing through the record to identify specific materials upon which the plaintiff relied, the Court will consider all of the parties' submissions and resolve this matter on the merits based on its comprehensive review of the record.

[5] NCIS agents like the plaintiff become eligible to retire after 25 years of service, but retirement is mandatory when NCIS agents turn 57-years old.  See Am. Compl. ¶ 10.

defendant asserts that these five were not "the best fit for the Naples vacancy" for various reasons.  Id.  According to the defendant, one of the candidates "lacked supervisory experience." Id.  Another "had just completed an [Outside the Continental United States] [(')OCONUS[')] tour."  Id. at 7.  The third candidate "was performing well in the Contingency Response Field Office, a difficult to fill vacancy."  Id. at 8.  The fourth candidate had recently completed an OCONUS assignment in South Korea, and if he had been selected for the Naples vacancy, he "would have transferred a second time in a little over two years and [his current] Field Office would lose the continuity of his leadership and the Agency would not have benefited from the cost of his move" back to the United States.  Id.  The final bidder "was sorely needed [to remain] in Singapore for an additional year" and "needed additional time to develop as a leader."  Id. Because the decision-makers agreed that "none of the five bidders were the ideal personnel for the Naples vacancy[,]" the defendant contends that they then "consulted the time in place list for a qualified candidate."  Id.

The time in place list shows how long employees have remained in a particular geographic area.  Id. at 9.  Although it does not list the employee's age or when the employee becomes retirement eligible, it does indicate the employee's mandatory retirement date.  Id.; Def.'s Mot. Ex. 16 (2012 Time in Place List).  The plaintiff was fifth on the time in place list, meaning that she had been in her area of responsibility the fifth longest of all employees on the list.  Id.  The defendant asserts that the first employee on the time in place list was "within two years of mandatory retirement" and therefore, "per Agency policy, he was excluded from selected transfer."  Id. at 12.  The second employee "was selected during the same vacancy cycle to transfer to an ASAC position in Hawaii . . . ."  Id.  The third employee "was selected for transfer to the Northwest Field Office as an ASAC."  Id.  The fourth was "skipped," based upon

the decision-makers' "belief that [the second employee on the list] was expected to retire rather than transfer to fill the Hawaii vacancy and in the event of his retirement [the fourth employee on the list was selected] to fill the Hawaii vacancy." Id.

The defendant represents that when the decision-makers arrived at the plaintiff's placement on the time in place list, they compared her to the five voluntary bidders for the Naples vacancy, along with considering factors such as "years of experience," "recent and relevant supervisory experience," "leadership experience at the GS-14 level," the strength of the employee's "criminal [investigations] background," "time in place," "mission requirements," "employee progression needs," and "budgetary considerations." Id. at 9–11. The defendant asserts that the plaintiff was ultimately selected for the Naples vacancy for the following non-discriminatory reasons:

> (1) her experience as a criminal investigator and supervisor who had served NCIS for nearly twenty-five years; (2) her depth of experience which was required by the position because it is in an OCONUS position with more visibility and responsibility than many of the Agency's GS-14 positions; (3) her considerable supervisory experience which eclipsed the five bidders and that she had considerable experience supervising employees at both the GS-13 and GS-14 levels; (4) her employment in a GS-14 leadership position; and (5) her lengthy tenure which exceeded that of any of the bidders.

Id. at 9 (citing Hogan Tr. at 69:3–21, 70:1–12; Hogan Decl. ¶ 14).

On or about January 4, 2012, when the plaintiff was over the age of 40, Def.'s Facts ¶ 3, she was informed by her supervisor that she was selected to be transferred to the Naples, Italy ASAC position. See id. ¶ 13. The plaintiff was directed to report to Naples in June 2012, Def.'s Facts ¶ 16, approximately one month before she would have been eligible to retire. The plaintiff disputes whether the NCIS accurately followed the policy and procedures that comprise the Mobility Program when they selected her for the transfer to Naples. Id. ¶ 6; Pl.'s Facts at 18 ¶ 14.

Following notification of her impending transfer to Naples, "[the p]laintiff made several requests for reconsideration [of the transfer,]" which were all denied.  Def.'s Facts ¶ 14; see Pl.'s Facts at 6–7 ¶ 14.  On April 19, 2012, after her requests for reconsideration had been denied, the plaintiff notified her supervisor "that she intended to retire in September 2012 and could not accept a transfer to fill the Naples, Italy vacancy[.]"  Def.'s Facts ¶¶ 18–19.  When the plaintiff "did not report to Naples, Italy[,] for the ASAC position[,]" Def.'s Facts ¶ 29; see Pl.'s Facts at 11–12 ¶ 29, she was "sent . . . on a temporary duty assignment . . . in Norfolk, Virginia[,]" Def.'s Facts ¶ 30; see Pl.'s Facts at 12 ¶ 30.  Then, "[o]n October 17, 2012, [the] NCIS announced the selection of [the p]laintiff to [an] ASAC position in Great Lakes, Illinois, effective November 19, 2012."  Def.'s Facts ¶ 32; see Pl.'s Facts at 13 ¶ 32.  However, the plaintiff "retired effective October 31, 2012[,] and never reported to the Great Lakes position."  Def.'s Facts ¶ 34; see Pl.'s Facts at 13 ¶ 34.

## B.     Procedural Background

The Court previously set forth the procedural background of this case in its prior Opinion.  See Memorandum Opinion at 4–5  (June 23, 2023).  As indicated previously, the Court issued a Memorandum Opinion on June 23, 2023, in which it granted the defendant's motion for summary judgment based on its finding that the plaintiff's several transfers were not adverse employment actions, that the plaintiff had not adequately alleged constructive discharge as an adverse employment action, and that the cancellation of the plaintiff's leave was not retaliatory. Id. at 13–23.  Following this Court's grant of summary judgment, the plaintiff appealed the ruling to the District of Columbia Circuit on July 20, 2023.  See Notice of Appeal, ECF No. 89.

The District of Columbia Circuit affirmed this Court's dismissal of the plaintiff's retaliation claim, insofar as it was predicated on the temporary cancellation of the plaintiff's

leave, see Van Horn, 2024 WL 4381186, at *1, but reversed this Court's dismissal of the

plaintiff's discrimination claim and the remaining component of her retaliation claim, id. at *3.

The basis for the Circuit's ruling was that the plaintiff's transfers to Naples, Norfolk, and Great

Lakes, Illinois "constitute adverse employment actions under Muldrow[ v. City of St. Louis, 601

U.S. 346 (2024)]." Id. at *2. The Circuit therefore remanded the case to the Court to assess: (1)

whether the plaintiff's transfers to Naples, Norfolk, and Great Lakes were motivated by unlawful

age discrimination; (2) if the transfers were motivated by unlawful age discrimination, whether

the transfers can serve as predicates for the plaintiff's constructive discharge claim; and (3)

whether the Norfolk and Great Lakes transfers were retaliatory. Id. at *3–4.

On March 20, 2025, the Court issued an Order in which it informed the parties that it

would review the record to determine whether it could resolve the issues remanded by the Circuit

without having to make any credibility determinations or whether the case must proceed to trial

if the parties are unable to reach a settlement agreement. Order at 1 (Mar. 20, 2025), ECF No.

93. On April 21, 2025, the Court, after reviewing the record, concluded that it may be able to

resolve the remanded issues, pending any supplemental briefing the parties might wish to submit

to address the effect of Chambers v. District of Columbia, 35 F.4th 870 (D.C. Cir. 2022), and

Muldrow v. City of St. Louis, 601 U.S. 346 (2024), on the resolution of this matter. Order (Apr.

21, 2025) at 1–2, ECF No. 94. On May 21, 2025, both parties submitted their supplemental

briefing. See Pl.'s Suppl. Br.; Def.'s Suppl. Br.

## II.    STANDARD OF REVIEW

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56 only if "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might

affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, unsupported allegations or conclusory statements are not sufficient to defeat summary judgment. See Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980) (noting that "[i]t is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact" (citations and internal quotation marks omitted) (second alteration in original)). And the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (internal quotation marks omitted). Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is]

8

insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" Ass'n of Flight Attendants-CWA, 564 F.3d at 465 (internal quotation marks omitted), pursuant to Rule 56(e), "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" id. (quoting Fed. R. Civ. P. 56(e)(1)). "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see also Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." (emphasis added)). Therefore, the party opposing summary judgment "must support [their] allegations . . . with facts in the record; a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment." Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993), abrogated on other grounds by Ames v. Ohio Dep't of Youth Servs., 605 U.S. 303 (2025) (citation and internal quotation marks omitted). "Given the potential difficulty for a plaintiff in an employment discrimination or retaliation action to uncover clear proof of discriminatory or retaliatory intent, the Court reviews a defendant's motion for summary judgment in a discrimination case with a slightly heightened standard." Johnson v. Perez, 66 F. Supp. 3d 30, 36 (D.D.C. 2014), aff'd, No. 15-5034, 2015 WL 5210265 (D.C. Cir. July 1, 2015), and aff'd on other grounds, 823 F.3d 701 (D.C. Cir. 2016) (citation and internal quotation marks omitted).

9

### III.    ANALYSIS

The Court will first address whether the plaintiff has adequately demonstrated that her transfers to Naples, Norfolk and Great Lakes, Illinois were motivated by unlawful age discrimination.  Because the Court finds, after considering the facts in the light most favorable to the plaintiff, that a reasonable factfinder could conclude that the defendant's proffered reasons for the plaintiff's transfer to Naples were pretext for discrimination, the Court will then determine whether the transfers can serve as predicates for the plaintiff's constructive discharge claim.  Finally, the Court will assess whether the plaintiff has adequately demonstrated that her transfers to Norfolk and Great Lakes were retaliatory.

### A.    Whether the Plaintiff Has Demonstrated that Her Transfers Were Motivated by Unlawful Age Discrimination

The ADEA requires that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  "At the summary judgment stage, the 'operative question' is whether 'the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee on the basis of' age."  Wilson v. Cox, 753 F.3d 244, 246 (D.C. Cir. 2014) (quoting Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam)).

When a plaintiff brings a claim of discrimination or retaliation under the ADEA and relies on circumstantial evidence to establish an alleged unlawful employment action, the Court analyzes the claim under the three-part burden-shifting framework of McDonnell Douglas Corp. v. Green.  See Jackson v. Gonzales, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing 411 U.S. 792, 802–05 (1973)).  Under the McDonnell Douglas framework, the plaintiff bears the initial burden

of establishing her prima facie case of discrimination or retaliation.[6]  See McDonnell Douglas,

411 U.S. at 802.  "If the plaintiff establishes a prima facie case, a presumption then arises that the

employer unlawfully discriminated against the employee[,]" and "[t]o rebut this presumption, the

employer must articulate a legitimate, non-discriminatory reason for its action."  Lewis v.

District of Columbia, 653 F. Supp. 2d 64, 72 (D.D.C. 2009) (citing Tex. Dep't of Cmty. Affs. v.

Burdine, 450 U.S. 248, 254 (1981)).

Where, however, an employer has asserted a legitimate, non-discriminatory reason for the

adverse employment action being challenged, the Court sets aside the McDonnell Douglas

framework and asks: "Has the employee produced sufficient evidence for a reasonable jury to

find that the employer's asserted non-discriminatory reason was not the actual reason and that

the employer intentionally discriminated against the employee . . . ?"  Brady v. Off. of the

Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

1. **Whether the Plaintiff Has Presented Sufficient Evidence for a Reasonable Jury to Find that the Defendant's Asserted Non-discriminatory Reasons for Her Transfer to Naples, Italy Are Pretextual**

The defendant does not contest that the plaintiff has established a prima facie case, see Def.'s

Mot. at 25, but as discussed above, the defendant has advanced non-discriminatory bases for the

plaintiff's involuntary transfer to Naples, Italy.  The Court must therefore consider whether the

---

[6] To establish a prima facie case of age discrimination under the ADEA, the plaintiff must show that: (1) she is a member of the ADEA's protected class of persons over forty years of age; (2) she was qualified for her position and was performing her job well enough to meet her employer's legitimate expectations; (3) she suffered an adverse employment action despite her qualifications and performance; and (4) she was disadvantaged in favor of similarly situated younger employees.  Mianegaz v. Hyatt Corp., 319 F. Supp. 2d 13, 19 (D.D.C. 2004).

To establish a prima facie case of retaliation under the ADEA, the plaintiff must show that (1) she engaged in statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and that (3) a causal link connects the two.  Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).

For purposes of assessing both claims, the transfers were adverse employment actions.  Van Horn, 2024 WL 4381186, at *2.

plaintiff has produced sufficient evidence for a reasonable jury to infer that the reasons provided by the defendant for the Naples transfer are pretextual and that the real reason for the transfer was discrimination based on the plaintiff's age. See Walker v. Johnson, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

The plaintiff raises seven alleged "material issues of fact in dispute" to show that the defendant's purportedly non-discriminatory reasons are pretextual. Pl.'s Opp'n at 14. First, the plaintiff contends that "the alleged decision[-]maker, Mr. Ridley, has made inappropriate age-related comment[s]" to Ronald Possanza, another NCIS employee, by purportedly telling Mr. Possanza that it was "time for him to retire." Id. Second, the plaintiff contends that her forced transfers "were in violation of NCIS policies and procedures." Id. Third, the plaintiff claims that "there are other forced transfers violating policy which involved other older NCIS agents protected by the ADEA." Id. Fourth, the plaintiff contends that "the Inspector General of the Department of Defense recognized the unusual number of early retirements in 2012 due to the policies of Mr. Ridley's administration," which she claims suggests that transfer decisions were motivated by age-based discrimination. Id. Relatedly, the plaintiff's fifth contention is that "NCIS management was seeking to address budgetary constraints and kept track of retirement dates for NCIS employees," which the plaintiff alleges "provid[es] evidence of motive for such [age] discrimination." Id. Sixth, the plaintiff contends that she was not the best option for the Naples vacancy because "NCIS manager Joe Briggs was initially selected [for the Naples vacancy]" and "immediately placed into the position after [the p]laintiff would not [agree to the] transfer," id. at 15, and "[the plaintiff's supervisor] stated that [the p]laintiff was not performing in an optimal manner [in the job she held prior to being assigned to the Naples vacancy,]" id. Finally, the plaintiff contends that "the time in place list [that the d]efendant relies upon and the

12

Retirement Eligible List [that the p]laintiff was provided are full of errors and are inconsistent with an intent to make non-discriminatory moves." Id.

After carefully reviewing the entire record, the Court concludes that the first and seventh alleged material facts in dispute are not material; that the fourth and sixth alleged material facts in dispute are undisputed; and that the third and the fifth alleged material facts are based on matters outside the record. Nonetheless, the Court concludes that there is a genuine issue of material fact as to whether the defendant deviated from NCIS policy in selecting the plaintiff for the Naples position.

The parties agree that, in January 2012, the plaintiff was subject to Policy Document No. 11-0006 Administrative (Mobility Program), Section 13-12.i.(1)(c). Def.'s Facts ¶ 5. This policy document identifies certain exemptions from the Mobility Program, specifically providing that:

> (1) Exemptions from the mobility program or special transfer requests for managers and non-managers will be considered under exceptional circumstances. When striking the proper balance of mission needs, fairness, and personal goals, absent extraordinary circumstances, personnel should not expect to be subject to an unrequested move when one of the following conditions are present:
> . . .
> (c) Employees serving in a headquarters assignment for less than two years . . . .

Def.'s Mot., Ex. 4 (Special Agent Career Program ("Mobility Program")) at 18, ECF No. 75-5 (emphasis added).

On February 27, 2011, the plaintiff was promoted from a GS-13 special agent position in Washington, D.C., to a GS-14 special agent position in Washington, D.C. Def.'s Mot., Ex. 17 (Notifications of Personnel Actions) at 4, ECF No. 75-18. According to the plaintiff, her involuntary transfer to Naples was therefore inconsistent with this policy because her promotion was the start of a new "headquarters assignment" for purposes of the NCIS Mobility Program

and she had therefore been serving in a headquarters assignment for less than two years when she was involuntarily transferred.[7]  See Pl.'s Opp'n at 1–4.

The defendant does not dispute that the plaintiff was promoted in 2012, but rather alleges that "[the plaintiff's] last permanent change of station occurred in 2002[,]" Def.'s Reply at 9, and therefore, as of "[the date of her selection for the transfer], [the p]laintiff had served in a headquarters assignment for NCIS for 10 years[,]" Def.'s Resp. to Pl.'s Facts at 20 ¶ 6.  In conjunction with his supplemental briefing, the defendant submitted an affidavit from Mr. Hogan, which provides in relevant part that during his tenure as the Assistant Director of Human Resources, "NCIS leadership consistently interpreted 'serving in a headquarters assignment,' as written in Section 13-12.i(1)(c), as any assignment or combination of assignments which reported to NCIS headquarters without consideration of the particular job title of the position or the assigned billet."  Def.'s Suppl. Br., Ex. 1 (Supplemental Declaration of John Andrew Hogan) ¶ 4, ECF No. 96-1.

However, because Mr. Hogan's representation cannot be accepted at face value and the Court "may not make credibility determinations or otherwise weigh the evidence" at this stage of the proceedings, it must conclude that there is a genuine dispute as to whether the defendant deviated from NCIS policy in selecting the plaintiff for the Naples position.  Johnson, 823 F.3d at 705.  Without Mr. Hogan's supplemental declaration, there was nothing in the record to indicate that this was in fact how the decision-makers interpreted "serving in a headquarters assignment" and whether the NCIS faithfully adhered to its own policies in selecting the plaintiff for the Naples position is "capable of affecting the substantive outcome of the litigation" and

---

[7] Although the NCIS Headquarters are located in Quantico, Virginia, see NCIS, Locations, https://www.ncis.navy.mil/About-NCIS/Locations/ (last visited May 1, 2026), the parties agree that Washington, D.C., is within the headquarters' area of responsibility, Def.'s Facts ¶ 3.

therefore is material.  Norris v. Wash. Metro. Area Transit Auth., 342 F. Supp. 3d 97, 108 (D.D.C. 2018); see also Lathram v. Snow, 336 F.3d 1085, 1093 (D.C. Cir. 2003) (finding that an unexplained deviation from a standard process can justify an inference of discriminatory motive).  Thus, the Court finds that the plaintiff has presented sufficient evidence from which a reasonable jury could find that the defendant's asserted non-discriminatory reasons for her transfer to Naples, Italy are pretextual.  Accordingly, the Court must deny the defendant's motion for summary judgment on the plaintiff's discrimination claim premised on the decision to transfer her to Naples, Italy.

**2. Whether the Plaintiff Has Presented Sufficient Evidence for a Reasonable Jury to Find that the Defendant's Asserted Non-discriminatory Reason for Her Temporary Assignment to Norfolk, Virginia Was Pretextual**

When the plaintiff did not report to Naples, she was given a temporary assignment in Norfolk, Virginia.  Def.'s Mot. at 16.  The defendant alleges that the assignment was nondiscriminatory because the plaintiff could not continue her headquarters assignment in the Criminal Investigations Directorate because a different employee had already assumed that position as of July 31, 2012, Pl.'s Opp'n, Ex. 6 (Declaration of Susan Raser ("Raser Decl.")) ¶ 19, ECF No. 80-7, so the plaintiff was assigned to the Norfolk office because it was "the only [location with an] open GS-14 billet in the Agency[,]" Def.'s Mot. at 27.  The plaintiff has not responded with evidence sufficient for a reasonable jury to infer that this reason is pretextual and that the real reason for the transfer was discrimination based on the plaintiff's age.  See Walker, 798 F.3d at 1092.  According to the plaintiff, Mr. Ridley told Mr. Ronald Possanza, who was the Executive Assistant Director of Atlantic Operations for the NCIS in 2012 and the person to whom the plaintiff reported in Norfolk, that he needed to "take one for the team" by having the plaintiff work for him in Norfolk.  See Pl.'s Opp'n at 19; id., Ex. 3 (Declaration of Ron Possanza

15

("Possanza Decl.")) at 5, ECF No. 80-4. The plaintiff also relies on a statement from Mr. Possanza that he "did not think it was a prudent idea" to temporarily assign the plaintiff to his staff in Norfolk. Possanza Decl. at 5; see Pl.'s Opp'n at 19.

Neither of these comments suggests that the plaintiff was temporarily assigned to Norfolk because of her age. Indeed, neither of these comments has any connection to the plaintiff's age at all. Mr. Possanza also explained that he only thought it was "not a prudent idea" to temporarily transfer the plaintiff to his office because he knew that she "was involved in a directed move" to the Naples position and her temporary assignment in Norfolk would require her to sit in on senior staff meetings with Mr. Ridley during which "sensitive personnel issues are addressed on occasions, to include mobility discussions concerning [the NCIS's] mobility policies." Possanza Decl. at 4. Mr. Possanza also explained in a declaration that "[his] office was undergoing significant renovations" and "[he] had no offices for [the plaintiff] to use[,]" id. at 4–5, and that Mr. Ridley told him to "take one for the team" in response to these concerns, id.

The plaintiff also alleges that once she arrived in Norfolk, "[she] was not given any meaningful work" and describes her temporary transfer to Norfolk as "a do-nothing position[,]" Pl.'s Opp'n at 18, 21.[8] But the record shows that, although "it took several days to get all of the IT systems to work[,]" the plaintiff "was able to integrate into [Mr. Possanza's] staff[,]" after which she "participate[d] in a Quality Assurance Visit" to a Field Office and "was a team player in all tasks she was assigned." Possanza Decl. at 4. Accordingly, the Court concludes that the

___

[8] The plaintiff also alleges that the Norfolk Assignment was a GS-13 position, "which downgraded [her] from GS-14." Pl.'s Opp'n at 18. However, this is clearly controverted by the record—namely, the Notice of Personnel Action regarding the plaintiff's retirement, filed while she was stationed in Norfolk, which indicates that she remained at the GS-14 pay grade during her assignment at that office. See Def.'s Mot., Ex. 24 (Notice of Personnel Action (Oct. 31, 2012)) at 1, ECF No. 75-25 (indicating "14" under "Grade or Level"). Therefore, there is no genuine dispute of material fact as to the plaintiff's GS-14 pay grade during her assignment in Norfolk.

plaintiff has not produced sufficient evidence for a reasonable jury to find that the defendant's

"asserted non-discriminatory reason was not the actual reason [for the temporary assignment]

and that the employer intentionally discriminated against the employee" in regards to that

assignment.  See Brady, 520 F.3d at 494.  The Court must therefore grant the defendant's motion

for summary judgment on the plaintiff's discrimination claim premised on her transfer to

Norfolk.

3. **Whether the Plaintiff Has Presented Sufficient Evidence for a Reasonable Jury to Find that the Defendant's Asserted Non-discriminatory Reason for Her Transfer to Great Lakes, Illinois Was Pretextual**

The defendant claims that the plaintiff "had previously indicated that she would retire in

September 2012[,]" but "once September 2012 passed and she had not retired, [she] was the only

Special Agent without a validated billet within the [NCIS]."  Def.'s Mot. at 16.  Therefore,

according to the defendant, "[w]hen a GS-14 vacancy arose in Great Lakes, Illinois[,]" despite

the fact that the NCIS "advertised the billet and received two bidders[,]" the plaintiff was

selected for the position "[b]ecause this was the first GS-14 billet to become available and

because of the need to find [the plaintiff] a validated billet."  Id. at 16–17.  The defendant also

provides reasons for why the decision-makers did not select the two bidders for this position.

Hogan Decl. ¶¶ 29–30.  According to the defendant, the first bidder, Special Agent Christabeth

Few, was approximately one year into her then-current assignment and had "recently transferred

from the Far East Field Office in Japan" so "transferring her to the Great Lakes position would

have meant transferring her twice in less than three years."  Id. ¶ 29.  The second bidder, Special

Agent Michael Keleher, who "was retirement eligible[,]"was not selected "because he had

performed well in his position as a Code 23 Division Chief in headquarters and had already spent

much of his career in the Central Field Office in Great Lakes, Illinois."  Id. ¶ 30.

17

The plaintiff contends that these reasons are pretextual and that this transfer, like the others, was because of her age. Pl.'s Opp'n at 18–19. In support of her position, the plaintiff again relies on a statement Mr. Possanza provided in his declaration that "the timing of her selection and official transfer to Great Lakes, [Illinois] appears imprudent." Possanza Decl. at 5. But this statement, like Mr. Possanza's other statement, has no connection to the plaintiff's age. Therefore, as with the decision to temporarily assign the plaintiff to Norfolk, the Court concludes that the plaintiff has not produced sufficient evidence for a reasonable jury to find that the defendant's "asserted non-discriminatory reason [for transferring her to Great Lakes] was not the actual reason and that the employer intentionally discriminated against [her]." See Brady, 520 F.3d at 494. Accordingly, the Court must grant the defendant's motion for summary judgment on the plaintiff's discrimination claim premised on her transfer to Great Lakes.

**B.      Whether the Plaintiff Has Adequately Demonstrated that She Was Constructively Discharged from the NCIS**

The plaintiff argues that the forced transfers "constructively terminat[ed] her employment because of and/or based on her age, when she was forced to resign her position." Am. Compl. ¶ 47. The Court must therefore determine whether "[the transfers] can serve as a predicate for the [plaintiff's] constructive discharge claim." Van Horn, 2024 WL 4381186, at *3. The Court has already concluded that the plaintiff's transfers to Norfolk and Great Lakes were not motivated by unlawful age discrimination, and they therefore cannot serve as a predicate for the plaintiff's constructive discharge claim. See Frazier v. Merit Sys. Prot. Bd., 672 F.2d 150, 159 n.29 (D.C. Cir. 1982) ("[A]n illegal reassignment, if it produces sufficient hardship and causes an unwilling resignation, can support [a constructive discharge] claim." (emphasis added)).

18

Thus, the only remaining question is whether the plaintiff's selection for the Naples ASAC vacancy caused her to be constructively discharged from the NCIS.

An employee's retirement "is presumed to be voluntary and not an adverse action, unless the employee overcomes the presumption by showing that the resignation or retirement was involuntary, and therefore qualifies as a constructive discharge." Hill v. Gray, 28 F. Supp. 3d 47, 61 (D.D.C. 2014) (citing Aliotta v. Bair, 614 F.3d 556, 566–67 (D.C. Cir. 2010). "An actionable constructive discharge claim requires a showing that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." Carter v. Geo. Wash. Univ., 180 F. Supp. 2d 97, 110 (D.D.C. 2001), aff'd, 387 F.3d 872 (D.C. Cir. 2004); see also Aliotta, 614 F.3d at 566 ("The test for constructive discharge is an objective one: whether a reasonable person in the employee's position would have felt compelled to resign under the circumstances.").

The defendant argues that "[the p]laintiff's failure to show the requisite level of severity [that led the Court to dismiss her hostile work environment claim] . . . also preclude[s] any finding that [the p]laintiff was constructively discharged." Def.'s Mot. at 32. The defendant further argues that the plaintiff "was selected for transfer [to Naples] pursuant to a mobility agreement and, when she did not transfer, she was not forced to do so or removed from federal service" but rather was "placed in a temporary GS-14 billet, though the position was just that, temporary." Id. The plaintiff argues in response that she "was subjected to multiple

discriminatory forced transfers that uprooted her life and created an intolerable workplace."[9]
Pl.'s Opp'n at 18–19.

The plaintiff has not alleged sufficient facts to demonstrate she was subjected to a workplace so "intolerable" that it "drove her into an involuntary [retirement,]" Downey v. Isaac, 622 F. Supp. 1125, 1132 (D.D.C. 1985); see Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir. 1981) (concluding that the plaintiff's retirement amounted to a constructive discharge where there existed "a continuous pattern of discriminatory treatment encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years"). The number of bidders who actively sought to transfer to Naples suggests that, far from being objectively intolerable, the position was desirable to at least some employees. And, when the plaintiff refused that assignment, the NCIS "informed [the plaintiff] that she was free to bid on positions other than the Naples ASAC position which she found more personally desirable, so long as they required a [permanent change of station] move" so that "[i]f selected, she could transfer to a position of her choosing rather than the Criminal ASAC position in Naples." Raser Decl. ¶ 15. On February 9, 2012, the NCIS announced GS-14 vacancies in Hawaii, Naples, Headquarters, and San Diego, but the plaintiff did not bid on any of these vacancies, id. ¶ 17, and instead retired effective October 31, 2012, Def.'s Mot., Ex. 24 (Notice of Personnel Action October 31, 2012) at 2, ECF No. 75-25. Based on this record, the plaintiff has not demonstrated that the defendant "deliberately made working conditions intolerable," or that

---

[9] The plaintiff also argues that the defendant "was aware [that the p]laintiff lived in the Washington, D[.]C[.] area and had [a] spouse working on a fellowship in Washington, D[.]C." Pl.'s Opp'n at 19. Although the plaintiff notified the defendant in her request for reconsideration of her Naples assignment that her husband was selected for a fellowship with the Department of Homeland Security and therefore "[would] not be able to transfer with [her] to Naples, Italy[,]" Def.'s Mot. Ex. 25 (Reconsideration Request to Mr. Ridley) at 1, ECF No. 75-26, there is no evidence in the record that the decision-makers were aware of this fact when they originally selected the plaintiff for the Naples position.

the existence of "aggravating factors [left her] no option but to end her employment." Carter, 180 F. Supp. 2d at 110. The Court therefore concludes that the Naples transfer cannot serve as a predicate for the plaintiff's constructive discharge claim. Accordingly, the Court will grant the defendant's motion for summary judgment on the plaintiff's constructive discharge claim.

**C.      Whether the Plaintiff Has Adequately Demonstrated that Her Transfers to Norfolk and Great Lakes Were Retaliatory**

The plaintiff also alleges that the defendant retaliated against her for filing an Equal Employment Opportunity (EEO) complaint by transferring her to Norfolk and Great Lakes. See Am. Compl. ¶¶ 56–59; Van Horn, 2024 WL 4381186, at *1. "The ADEA prohibits employers from retaliating against an employee who complains of age discrimination." Sagar v. Mnuchin, 305 F. Supp. 3d 99, 118 (D.D.C. 2018), aff'd, No. 18-5183, 2019 WL 667201 (D.C. Cir. Jan. 29, 2019). "To prove unlawful retaliation, a plaintiff must show: (1) that [she] opposed a practice made unlawful by [the ADEA]; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice." McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

In May 2012, the plaintiff "went to an EEO counselor with [the] NCIS and reported her belief that the January 2012 involuntary transfer to Naples, Italy was discriminatory on account of [the p]laintiff's age." Pl.'s Facts at 21, ¶ 23. Although the parties dispute when the decision-makers learned of this complaint, assuming that the decision-makers were aware of it before they decided to transfer the plaintiff to Norfolk and Great Lakes and recognizing that those two transfers constitute adverse actions for purposes of the plaintiff's retaliation claim, the plaintiff has nevertheless failed to demonstrate that the transfers were retaliatory. The plaintiff repeats many of the same arguments she advanced to show that she was constructively discharged to

21

show that she was retaliated against.  <u>See</u> Pl.'s Opp'n at 20–22.  And, her retaliation claim fails

for the same reason her constructive discharge claim fails—the evidence establishes that she was

temporarily transferred to Norfolk until a permanent billet became available and Great Lakes

was the first available billet.  Additionally, the plaintiff was offered opportunities to bid on other

billets, but, she declined to do so and, absent her bidding for a transfer to a permanent billet, she

eventually had to be moved out of her temporary assignment.  The plaintiff has therefore failed

to provide sufficient evidence for a reasonable jury to find that she was transferred to either

location because she engaged in protected activity.  <u>See</u> <u>Sagar</u>, 305 F. Supp. at 119.

Accordingly, the Court will grant the defendant's motion for summary judgment on the

plaintiff's remaining retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part

the defendant's motion for summary judgment on the plaintiff's remaining claims.

**SO ORDERED** this 16th day of July, 2026.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.